[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} Defendant-appellant, Estelle G. Cummings,[1] appeals the judgment of the Hamilton County Juvenile Court granting permanent custody of her minor child to the plaintiff-appellee, Hamilton County Department of Jobs and Family Services (HCJFS). For the following reasons, we affirm the judgment of the juvenile court.
{¶ 3} Cummings is the mother of Heavenli Cummings, who was born on January 12, 2000. Soon after Heavenli was born, HCJFS sought and obtained an order temporarily removing Heavenli from Cummings's home. In June 2001, HCJFS filed a motion for permanent custody based upon its investigation of Cummings's household, her psychological state, and the care that she had been providing to Heavenli. A hearing was held before a magistrate, and following a hearing on Cummings's objections, the juvenile court adopted the decision of the magistrate awarding permanent custody to HCJFS.
{¶ 4} In her first assignment of error, Cummings initially argues that the evidence did not demonstrate that she had failed to remedy the conditions that had caused Heavenli to be removed from her care. In essence, she argues that the juvenile court erred in inquiring into concerns that arose after the initial complaint. We find no merit in this argument. The juvenile court was required to determine whether permanent custody was in the best interest of the child pursuant to R.C.2151.414(B)(1). In making this determination, the court was required "to consider all relevant factors."[2] Therefore, we find no error in the court's inquiry into matters that came to the attention of HCJFS after the initial phase of the investigation.
{¶ 5} Cummings also maintains that the juvenile court erred because, in ruling on her objections, it chose to hear additional evidence and did not consider the evidence adduced before the magistrate that contradicted the magistrate's findings. This argument is not persuasive. The juvenile court, in considering the objections to the magistrate's decision, did not receive additional evidence. Moreover, there is nothing in the juvenile court's judgment indicating that it had failed to weigh all of the evidence presented to the magistrate.
{¶ 6} Cummings also argues that the evidence did not support the juvenile court's order terminating her parental rights. A finding that the termination of parental rights is in the best interest of the child must be supported by clear and convincing evidence.[3] Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.[4] A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[5]
{¶ 7} In the case at bar, we hold that the trial court's determination was in accordance with the evidence. In February 2000, Cummings and Heavenli were residing with Cummings's mother. A representative of HCJFS discovered one-month-old Heavenli in dirty clothing and a soiled diaper, lying on a blanket on the kitchen floor. The oven door was open to provide heat. There was no furniture, except for a mattress on the floor where Cummings, her mother, and Heavenli slept. Heavenli was underweight, suffered from blisters due to diaper rash, and had not been seen by a physician since birth.
{¶ 8} Cummings agreed to permit the juvenile court to award temporary custody to HCJFS. Accordingly, she was ordered to undergo psychological testing, to submit to urine screens, to find housing separate from her mother's residence and to complete parenting classes. Thereafter, HCJS worked with Cummings for two years pursuant to a plan for reunification.
{¶ 9} During that period, Cummings was psychologically assessed as being mildly mentally retarded. According to the assessment, Cummings had a schizoid personality disorder and was excessively attached to her mother. Nonetheless, Cummings viewed her lifestyle as normal and did not see any reason to change it. She also did not appreciate the need to remove Heavenli from the home of her alcoholic grandmother. At least one psychologist opined that Cummings could not adequately parent Heavenli even if she had her own living accommodations.
{¶ 10} Cummings argues that she complied with the reunification plan that HCJFS had formulated, but the record does not support her contention. Although Cummings cooperated with HCJFS in that she attended parenting classes, she was unable to complete the parenting program because the grandmother refused to permit in-home sessions. Cummings also failed to participate in outpatient substance-abuse treatment after a positive test for marijuana. Similarly, while Cummings regularly participated in supervised visitation with Heavenli, she arrived at a number of visits with alcohol on her breath. Finally, the record demonstrates that HCJFS worked with Cummings to find independent housing and to find regular, steady employment so that she could qualify for subsidized housing, but that Cummings had failed to follow through with the attempts to place her in either housing or employment.
{¶ 11} Cummings also claims that the juvenile court should have taken into consideration the fact that she had remarried and no longer resided with her mother. But those facts did not come to the juvenile court's attention until the hearing on Cummings's objections to the magistrate's decision and then only by way of a representation by her counsel. Moreover, as we have already noted, there was evidence in the record that Cummings would not be a suitable parent even if she were to maintain a separate residence. Under these circumstances, we find no error in the trial court's conclusion that the termination of parental rights was in the best interest of the child, and the first assignment of error is overruled.
{¶ 12} In her second assignment of error, Cummings contends that she was denied the effective assistance of trial counsel because counsel did not request that Cummings undergo an independent psychological evaluation. To establish ineffective assistance of counsel, the parent must show that counsel's performance was deficient and that the deficient performance resulted in prejudice.[6] In the case at bar, Cummings cannot demonstrate prejudice, because there is no indication that an independent evaluation would have been favorable to her. The second assignment of error is overruled, and the judgment of the juvenile court is affirmed.
{¶ 13} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Gorman, JJ.
[1] Throughout this judgment entry, "Cummings" will denote Estelle Cummings.
[2] R.C. 2151.414(D).
[3] R.C. 2151.414(B)(1).
[4] See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613.
[5] See In re Harris, 1st Dist No. C-020512, 2003-Ohio-672.
[6] In re Heston (1998), 129 Ohio App.3d 825, 827, 719 N.E.2d 93.